UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| KEITH TOLBERT, : | |
| Plaintiff, : | |
| : | |
| v. : | No.   2:22-cv-01228 |
| : | |
| DR. STEPHEN WEINER, *et al.*, : | |
| Defendants. : | |

**O P I N I O N**
Defendants' Motion to Dismiss, ECF No. 13 - Granted in Part, Denied in Part

**Joseph F. Leeson, Jr.** November 28, 2022
**United States District Judge**

## I. INTRODUCTION

Plaintiff Keith Tolbert initiated this action pursuant to 42 U.S.C. § 1983 against defendants Dr. Stephen Wiener, Mandy Sipple, Ann Lewis, the Pennsylvania Department of Corrections ("DOC"), George Little, Officer A. Jones, and Wellpath Health Services ("Wellpath") for medical malpractice, retaliation, and deliberate indifference to his medical needs regarding treatment he received at SCI Phoenix. Dr. Wiener, now substituted by Nicola Wiener for Dr. Wiener's estate, and Wellpath have moved to dismiss the Complaint for failure to state a claim. The Motion to Dismiss is denied in part and granted in part without prejudice to Tolbert's opportunity to file an amended complaint.

## II. BACKGROUND

The following facts are alleged in Tolbert's *pro se* complaint. On November 23, 2019, Plaintiff Keith Tolbert was rushed to the emergency room at Einstein Medical Hospital after sustaining serious facial and head injuries in the gymnasium at SCI Phoenix, the correctional

facility where Tolbert was located at the time. *See* Not. Remov. at Exhibit A ("Compl."), ¶¶ 2, 11, 13, ECF No. 1.  At that time, Tolbert had difficulty walking, blurred vision, slurred speech, and exhibited signs of amnesia.  Compl. ¶ 12.  Three days later, Tolbert underwent surgery for a "zygomatic and temporal fracture[,]" performed by Dr. Travis Weinsheim. *Id*. ¶ 13.  During this procedure, Tolbert's jaw was wired shut and he received stitches.  *Id*. ¶ 12.

On November 28, 2019, Tolbert was discharged from the hospital and placed in the prison infirmary at SCI Phoenix where he met with Dr. Stephen Wiener for the first time.  *Id*. ¶ 14.  Tolbert was still experiencing post-operative symptoms after his discharge, including "bad headaches, migraines, blurred vision, frequent disorientation[,] . . . nausea and vomiting, and post-operative pain." *Id*. ¶ 15. Tolbert informed Dr. Wiener of his continued symptoms, and Dr. Wiener prescribed Tolbert with ibuprofen and oxycodone for his pain and disorientation.  *Id*.  Tolbert also complained to Dr. Wiener that the infirmary's lights, which were left on for twenty-four hours a day, were exacerbating his symptoms.  *Id*. ¶ 16.  Tolbert requested to be placed in a cell without twenty-four-hour lighting, but Dr. Wiener rejected his request, stating, "This is not Burger King.  You can't have it your way." *Id*.

On December 10, 2019, Tolbert returned to Einstein Medical Hospital for post-surgical care, specifically to unwire his jaw and remove his stiches. *Id*. ¶ 17.  At this appointment, Dr. Weinsheim recommended that Tolbert be evaluated and treated by two specialists, an ophthalmologist and a neurologist, specifically for treatment of Tolbert's "right eye acuity and his post-concussion syndrome."  *Id*.  Dr. Weinsheim accordingly wrote two referrals for Tolbert to see these specialists. *Id*.  The written referrals were given to the SCI Phoenix Corrections Officer who accompanied Tolbert to the hospital.  *Id*.  ¶ 17.  Tolbert was returned to the SCI Phoenix infirmary later that day. *Id*.

The following morning, sometime before 9:00 a.m., Defendant Ann Lewis, a registered nurse at SCI Phoenix, entered Tolbert's infirmary room to give him medication. *Id.* ¶ 19. When asked to identify the medication, Nurse Lewis initially refused and ordered Tolbert to take the medicine. *Id.* When Tolbert persisted that she identify the medicine, Nurse Lewis responded, "It's Tylenol. Now take it so I can leave[.]" *Id.* Tolbert refused to take the Tylenol and explained to Lewis that Dr. Wiener had not prescribed Tylenol but had prescribed ibuprofen and oxycodone. *Id.* After Tolbert's refusal, Nurse Lewis called in Defendant A. Jones, a correctional officer, who threatened Tolbert with disciplinary action if he did not take the Tylenol. *Id.* ¶ 20. Tolbert continued to refuse the medicine, and neither Nurse Lewis or Officer Jones returned with Tolbert's prescribed pain medication. *Id.*

That same morning, sometime after the above exchange, Tolbert got out of his infirmary bed to use the bathroom when he suddenly became dizzy and collapsed. *Id.* ¶ 21. As a result of his fall, Tolbert injured the right side of his head, which had just been operated on, and injured his left knee and lower back. *Id.* Tolbert remained immobilized on the floor due to his pain and called out for help. *Id.* ¶¶ 21-22. Tolbert's cellmate used the infirmary's emergency call intercom to request help from Nurse Lewis. Shortly thereafter, around 9:00 a.m., Nurse Lewis, Officer Jones, and another nurse arrived to help Tolbert. *Id.* ¶ 23. Initially, Nurse Lewis told the others not to move Tolbert until he had been stabilized. *Id.* ¶ 24. She left Tolbert's cell, returning about ten minutes later stating, "The doctor said take his vitals." *Id.* ¶ 25. At this point, Tolbert's injuries to his face and knee were visibly swelling from his fall. *Id.* ¶ 27. Tolbert was also crying and screaming in pain. *Id.* ¶ 30. Tolbert begged to be examined, for help off the floor, and to see a doctor. *Id.* ¶¶ 30. However, instead of examining Tolbert's injuries, Nurse Lewis told Officer Jones and the other nurse, "Leave him there, he's faking" and "Don't anyone

help him up." *Id*. ¶¶ 28-30.  Nurse Lewis and the others left the room without assisting Tolbert, and he remained immobilized on the floor for approximately twenty more minutes. *Id*. ¶ 32. During this time, Tolbert cried out for help, and Nurse Lewis directed others in the infirmary to not intervene. *Id*. ¶ 34.  Around 9:35 a.m., Tolbert's cellmate again called Nurse Lewis requesting medical care for Tolbert. *Id*. ¶ 35.  Nurse Lewis returned to help Tolbert off the floor and into a wheelchair but again did not provide any medical examination or treatment of his injuries. *Id*.

Approximately two hours later, around 11:00 a.m., Dr. Wiener examined Tolbert. *Id*. ¶ 39.  Tolbert complained to Dr. Wiener about (1) the twenty-four-hour lighting exacerbating his disorientation and causing him to collapse, (2) Nurse Lewis's mistreatment and refusal to examine him after his fall, (3) his pain and injuries from the recent fall, and (4) the worsening of his post-operative symptoms, which at that time included "severe pain, migraines, swelling and numbness to the right side of [his] head, dizziness, slow cognition and inability to focus/concentrate, double vision[,] and loss of depth perception." *Id*. ¶¶ 39-40.  Dr. Wiener did not provide any treatment to Tolbert at that time. *Id*. ¶ 41.  Tolbert also requested that Dr. Wiener schedule Tolbert's appointments with an ophthalmologist and neurologist, per Dr. Weinsheim's post-operative referrals. *Id*. ¶ 43.  However, Dr. Wiener refused to schedule the neurology appointment, claiming there was no such referral on record, and further refused to contact Dr. Weinsheim or Einstein Medical Hospital staff to verify the referral's existence. *Id*. ¶ 44.

Over the next couple of months, Tolbert continued to submit medical requests to Dr. Wiener and SCI Phoenix medical personnel.  On December 14, 2019, Tolbert submitted a medical sick call request complaining of pain in his eye, lower back, and right knee. *Id*. ¶ 48.

On December 22, 2019, Tolbert contacted Dr. Wiener complaining of pain related to his surgery and recent fall, informing Dr. Wiener that Tolbert had not been given pain medication, and inquiring as to why he had not been scheduled for a neurology appointment. *Id*. ¶ 49.  Tolbert did not receive treatment following any of the above requests, nor was he scheduled for a neurology appointment.  Instead, Tolbert was told by a nurse to see the "Sick Call Physician," that he was currently prescribed with Motrin, and informed that he had an upcoming eye appointment, but no appointment scheduled with a neurologist. *Id*. ¶¶ 50-51. At some point thereafter, Tolbert contacted Defendant Mandy Sipple, the Corrections Health Care Administrator at SCI Phoenix, notifying her of his issues with receiving treatment and lack of neurology appointment. *Id*. ¶ 52.  Similarly, no action was taken by Sipple. *Id*. ¶ 53.  On March 16, 2020, Tolbert was seen by medical staff who again rejected his request to verify the neurology referral. *Id*. ¶ 54.  Tolbert submitted two grievances regarding the above events. *Id*. ¶¶ 47, 57.

On July 15, 2020, Tolbert was transferred from SCI Phoenix to SCI Somerset. *Id*. ¶ 61. On September 3, 2020, the Corrections Health Care Administrator at SCI Somerset verified the neurology referral and told Tolbert that an appointment was pending. *Id*. ¶ 63. Approximately fifteen months later, on December 14, 2021, Tolbert wrote to the Corrections Health Administrator complaining that a neurology consultation had still not taken place. *Id*. ¶ 64-65. Around one week later, Tolbert was informed that he was scheduled to see a neurologist soon. *Id*. ¶ 66.  As of the date of the Complaint, no neurology visit had occurred. *Id*. ¶ 67.  On February 12, 2022, roughly twenty-six months after Tolbert's fall in the SCI Phoenix infirmary, medical staff at SCI Somerset prescribed Tolbert a back brace for his previously untreated back injury. *Id*. ¶ 68.

On July 6, 2020, Tolbert initiated this action in the Court of Common Pleas of Montgomery County.  *See* Compl. On March 18, 2022, Tolbert filed an Amended Complaint which named the defendants in this action, alleging medical malpractice, First Amendment retaliation, and deliberate indifference to his medical needs under the United States and Pennsylvania constitutions.  *See* Compl.  Shortly thereafter, defendants Little, Sipple, Officer Jones, Nurse Lewis, and DOC removed this action to this Court.[1]  *See* Not. Remov.  Defendants Wellpath and Dr. Wiener, now represented by Nicola Wiener as the representative of Dr. Wiener's estate, filed a Motion to Dismiss the Amended Complaint.  *See* Mot. Dismiss, ECF No. 13.  In the motion, Defendants argue that Tolbert has failed to state a claim for deliberate indifference against either Dr. Wiener or Wellpath.  *See* Mot. Dismiss at 6-13.  The motion requests this Court to dismiss all claims against Defendants but does not substantively address Tolbert's medical malpractice and retaliation claims.  *See* Mot. Dismiss at 14.  Tolbert filed a Response in opposition to the motion, arguing against the dismissal of his claims against Dr. Wiener.[2]  *See* First Resp., ECF No. 24; Second Resp., ECF No. 47.  In his response, Tolbert also voluntarily dismissed his claims against Wellpath, informing the Court that he has seen a neurologist since the Complaint was filed, and therefore is no longer seeking injunctive relief, which was the sole reason he named Wellpath as a defendant. *See* First Resp. at 11-12.

---

[1]   Tolbert has since voluntarily dismissed defendants Little and DOC.  *See* ECF No. 41.
[2]   Tolbert filed an additional response to the motion after Defendants Wellpath and Dr. Wiener, in error, requested this Court to grant their motion as uncontested.  *See* ECF No. 43.  Tolbert's briefs appear substantively identical.  *See* First Resp., ECF No. 24; Second Resp., ECF No. 47.

### III. LEGAL STANDARDS

#### A. Motion to Dismiss – Standard of Review – Applicable Law

In rendering a decision on a motion to dismiss, this Court must "accept all factual allegations as true [and] construe the complaint in the light most favorable to the plaintiff." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (quoting *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002)) (internal quotation marks omitted).  Only if "the '[f]actual allegations . . . raise a right to relief above the speculative level'" has the plaintiff stated a plausible claim. *Id.* at 234 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 540, 555 (2007)).  However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (explaining that determining "whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense"). The defendant bears the burden of demonstrating that a plaintiff has failed to state a claim upon which relief can be granted.  *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (citing *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991)). Moreover, "however inartfully pleaded," complaints by *pro se* prisoners "must be held to less stringent standards than formal pleadings drafted by lawyers and can only be dismissed for failure to state a claim if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  *Estelle v. Gamble*, 429 U.S. 97, 106 (1976) (internal marks and citation omitted).

B.     **42 U.S.C. § 1983 and Deliberate Indifference under the Eight Amendment – Review of Applicable Law**

To state a claim under 42 U.S.C. § 1983, "a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). The Eighth Amendment to the United States Constitution prohibits "deliberate indifference to serious medical needs of prisoners" because such treatment, or lack thereof, "constitutes . . . unnecessary and wanton infliction of pain[.]" *Estelle*, 429 U.S. at 104 (internal marks and citation omitted). However, mere negligence in diagnosing or treating a medical condition does not state a claim under the Eighth Amendment. *Id.* at 105-06. Rather, to state a deliberate indifference claim under the Eighth Amendment, "a prisoner must make (1) an 'objective' showing that the prisoner's medical needs were sufficiently serious and (2) a 'subjective' showing that the prison official acted with a sufficiently culpable state of mind." *Mitchell v. Gershen*, 466 F. App'x 84, 86 (3d Cir. 2011) (citation omitted).

The concept of a serious medical need has two components: (1) the prisoner's "condition must be such that a failure to treat can be expected to lead to substantial and unnecessary suffering, injury, or death," and (2) "the condition must be 'one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention.'" *Colburn v. Upper Darby Twp.*, 946 F.2d 1017, 1023 (3d Cir. 1991) (quoting *Monmouth Cnty. Corr. Inst. Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987)). Examples of deliberate indifference include "where [a] prison official: (1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; or (3) prevents a prisoner

from receiving needed or recommended treatment." *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999) (citation omitted).  However,

> short delays in treatment unaccompanied by arbitrary or unduly burdensome bureaucratic procedures, and the refusal to summon the medical specialist of the inmate's choice, perform tests or procedures that the inmate desires, or to explain to the inmate the reason for medical action or inaction does not amount to cruel and unusual punishment.

*Roman v. Little*, No. 19-cv-5204, 2020 U.S. Dist. LEXIS 76638, at *9 (E.D. Pa. April 30, 2020) (internal quotation and citation omitted).

Prison medical authorities are given considerable latitude in the diagnosis and treatment of inmate patients, *Young v. Kazmerski*, 266 Fed. Appx. 191, 194 (3d Cir. 2008), and mere disagreement as to proper care does not support a finding of deliberate indifference.  *White v. Napoleon*, 897 F.2d 103, 110 (3d Cir. 1990).  *See also Basemore v. Vihlidal*, No. 13-669, 2014 U.S. Dist. LEXIS 20603, at *37-38 (W.D. Pa. Jan. 30, 2014) ("[D]isagreement as to the appropriate choice of medical treatment does not give rise to a constitutional violation because the 'right to be free from cruel and unusual punishment does not include the right to the treatment of one's choice.'") (quoting *Layne v. Vinzant*, 657 F.2d 468, 473 (1st Cir. 1981)).  However, a complete failure to treat an inmate patient may support a finding of deliberate indifference.  *See Miller v. Beard*, 699 F. Supp. 2d 697, 707 (E.D. Pa. 2010) ("Although an isolated failure to treat, without more, is ordinarily not actionable, it may in fact rise to the level of a constitutional violation if the surrounding circumstances suggest a degree of deliberateness, rather than inadvertence, in the failure to render meaningful treatment.") (internal quotation and citation omitted).  Additionally, a deliberate failure to provide prescribed medical care, or a "prison doctor's choice of an ineffective course of treatment in contravention of another physician's explicit orders or the choice of an 'easier and less efficacious treatment' may

establish deliberate indifference." *Rodriguez v. Smith*, No. 03-3675, 2006 U.S. Dist. LEXIS 10726, at *45 (E.D. Pa. March 16, 2006) (citation omitted).

      **C.**      **Deliberate Indifference under Pennsylvania Law – Review of Applicable Law**

Article I, Section 13 of the Pennsylvania Constitution provides that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel punishments inflicted." Pa. Const., Art. I, §13. "[I]t is well settled that the Pennsylvania prohibition against cruel and unusual punishment is coextensive with the Eighth and Fourteenth Amendment of the United States Constitution." *Banks v. Trotta*, No. 20-1438, 2022 U.S. Dist. LEXIS 70476, at *20-21 (M.D. Pa. April 18, 2022) (internal marks omitted) (citing *Commonwealth v. Bonner*, 135 A.3d 592, 597 n. 18 (Pa. Super. Ct. 2016)), *adopted by* 2022 U.S. Dist. LEXIS 131882 (M.D. Pa., July 25, 2022). Therefore, a district court's finding under the Eighth Amendment to the United States Constitution "would apply with equal force to any parallel claim brought under Article I, Section 13 of the Pennsylvania Constitution." *See id*. However, "Pennsylvania does not recognize a private right of action for damages in a suit alleging violation of the Pennsylvania Constitution." *Hamilton v. Spriggle*, 965 F. Supp. 2d 550, 577 (M.D. Pa. 2013) (citing *Gary v. Braddock Cemetery*, 517 F.3d 195, 207 n. 4 (3d Cir. 2008)).

      **D.**      **Retaliation under the First Amendment – Review of Applicable Law**

"Retaliation for the exercise of constitutionally protected rights is itself a violation of rights secured by the Constitution actionable under section 1983." *Napoleon*, 897 F.2d at 111-12.

> In order to set forth a cognizable claim for First Amendment retaliation, a plaintiff must allege that '(1) he engaged in a constitutionally protected activity; (2) he suffered, at the hands of a state actor, adverse action sufficient to deter a person of ordinary firmness from exercising his constitutional rights; and (3) the

>   protected activity was a substantial or motivating factor in the state
>   actor's decision to take adverse action.'

*Washington v. Barnhart*, No. 17-00070, 2020 U.S. Dist. LEXIS 69545, at *15 (W.D. Pa. April 20, 2020) (quoting *Fantone v. Latini*, 780 F.3d 184, 191 (3d Cir. 2015)). "Further, to establish the critical element of causation, a plaintiff usually must allege 'either (1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link.'" *Id*. (quoting *Lauren W. v. DeFlaminis*, 480 F.3d 259, 267 (3d Cir. 2007)).

### E.      Medical Malpractice under Pennsylvania Law – Review of Applicable Law

Under Pennsylvania law, "a plaintiff seeking damages for medical malpractice must 'establish a duty owed by the physician to the patient, a breach of that duty by the physician, that the breach was the proximate cause of the harm suffered, and the damages suffered were a direct result of the harm.'" *Maresca v. Mancall*, 135 Fed. Appx. 529, 531 (3d Cir. 2005) (quoting *Toogood v. Rogal*, 824 A.2d 1140, 1145 (Pa. 2003)). Additionally, plaintiffs must file a valid "certificate of merit" under Rule 1042.3 of the Pennsylvania Rules of Civil Procedure. Pa. R. Civ. P. 1042.3. *See also Tisdale v. Zaloga*, No. 19-1022, 2019 U.S. Dist. LEXIS 187981, at *8-9 (M.D. Pa. Oct. 30, 2019) ("The requirements of Rule 1042.3 are deemed substantive in nature and, therefore, federal courts in Pennsylvania must apply these prerequisites of Pennsylvania law when assessing the merits of a medical malpractice claim."). This rule, which applies to plaintiffs' complaints regardless of whether they are counseled or *pro se*, provides that the certificate of merit must contain either (1) a written statement from a licensed professional as to causation and stating that the defendant's conduct fell outside of the acceptable standard of care, (2) a statement that the allegations against the defendant are solely based on the defendant's supervisory role over other licensed professionals who deviated from the standard of care, or (3)

11
112822

a statement that expert testimony is not necessary for the prosecution of the claim. *See* Pa. R. Civ. P. 1042.3(a)(1-3).

## IV.   ANALYSIS

### A.   Deliberate Indifference under Federal and State Law

The Court finds that Tolbert has stated a deliberate indifference claim under the Eighth Amendment against Dr. Wiener. Here, Tolbert's allegations against Dr. Wiener are essentially two-fold. Tolbert alleges that Dr. Wiener (1) knew of Tolbert's need for medical treatment after his fall in the infirmary but intentionally refused to provide it, and (2) delayed his neurology examination, a necessary medical treatment, based on a non-medical reason. Defendants do not dispute in their motion that Tolbert had a serious medical need.

First, regarding Tolbert's injuries from his fall in the infirmary, Tolbert alleges that Dr. Wiener failed to provide him with any examination, treatment, or diagnosis.[3] Before his accidental fall, Tolbert complained about the lighting in the infirmary exacerbating his concussion symptoms and requested that Dr. Wiener move him to another cell, which he denied. The following day, after Tolbert's fall in the infirmary, Dr. Wiener visited Tolbert's cell and Tolbert (1) described the accident to Dr. Wiener, which Tolbert believed was caused by the infirmary lights intensifying his disorientation, (2) detailed his pain, ongoing post-surgical symptoms and new injuries, and (3) complained about Nurse Lewis's mistreatment of him. However, Dr. Wiener refused to examine or treat Tolbert's fall-related injuries, nor did he ensure

---

[3]   While Tolbert acknowledges that Dr. Wiener "visited" him two hours after his fall, Tolbert does not specify whether Dr. Wiener examined his injuries or entirely failed to examine him during this visit. However, Tolbert generally alleges that all of the medical staff he encountered at SCI Phoenix failed to order "any type of examinations, diagnostic or neurological tests." The Court therefore infers that Dr. Wiener falls under this generalized statement in the light most favorable to Tolbert at this stage of the litigation.

that Tolbert had received his previously prescribed pain medication. Tolbert alleges that eleven days after the fall, and approximately twenty-six days after his surgery, he informed Dr. Wiener in writing that he still had not been provided with any pain medication. Dr. Wiener did not respond, and according to Tolbert, no treatment was provided following his request. Therefore, as alleged, Dr. Wiener completely failed to treat Tolbert's fall-related injuries and pain.

Second, regarding the neurology referral, Tolbert alleges that Dr. Wiener intentionally refused to verify the existence of a neurology referral made by Dr. Weinsheim, Tolbert's surgeon, and made no medical judgment as to whether a neurology appointment was necessary. Therefore, this is not a case where Tolbert merely disagreed with Dr. Wiener about the course of treatment or demanded to see a specialist that was not medically recommended. Tolbert alleges that the neurology consultation and treatment were "prescribed" by Dr. Weinsheim. Although Tolbert admits in his response that this neurology appointment has taken place since he was relocated to SCI Somerset, Tolbert maintains that Dr. Wiener's failure to schedule his neurology appointment and resultant delay in care constituted deliberate indifference. This case is unlike *Pearson*, for example, where "there [was] nothing in the record indicating that [the defendant doctor] refused to allow [the plaintiff] to receive the prescribed treatment, let alone that [the defendant doctor] knew that . . . the follow-up appointment had been prescribed." *See Pearson v. Prison Health Serv.*, 850 F.3d 526, 543 (3d Cir. 2017). Rather, here, the pleadings show that Dr. Wiener was informed by Tolbert that Dr. Weinsheim had referred him to a neurologist for post-surgical care. However, instead of verifying the prescribed treatment with Dr. Weinsheim, Dr. Wiener claimed that no referral existed, refused to contact Einstein Medical Center to verify the referral's existence, and thereafter refused to schedule the prescribed neurology appointment. Although, "[a] slight delay between medical request and appointment is not uncommon,

particularly when . . . the injury in question does not pose an imminent threat to the requesting patient such that urgent care is required[,]" *Ramey v. Phillips*, No. 15-1431, 2016 U.S. Dist. LEXIS 140421, at *21-22 (E.D. Pa. Oct. 11, 2016), Tolbert alleges that Dr. Wiener's actions caused a delay of over two years, more than a slight delay, and that during that time, his pain and neurological issues persisted and remained untreated.  Therefore, as pleaded, Dr. Wiener's repeated refusal to verify the referral's existence and subsequent failure to schedule the neurology appointment interfered with Tolbert's prescribed treatment, and this interference was not apparently based on Dr. Wiener's determination that a neurology appointment was medically unnecessary.

Based on the above, this Court holds that Tolbert has stated a claim for deliberate indifference under the Eighth Amendment because Dr. Wiener repeatedly and for non-medical reasons denied and/or delayed Tolbert's requests for treatment, and this "pattern of disinterested conduct 'separates this complaint from ordinary allegations of medical malpractice.'"  *See Pearson*, 850 F.3d at 541 (citation omitted).  However, because Tolbert is only seeking damages for the alleged violations of his constitutional rights, Tolbert cannot state a parallel claim under the Pennsylvania Constitution.[4]  Therefore, Defendants' motion to dismiss is denied as to the deliberate indifference claim brought under the Eighth Amendment to the United States Constitution but granted as to the parallel claim brought under Article I, Section 13 of the Pennsylvania Constitution.

---

4    In his response, Tolbert voluntarily dismissed Wellpath as a defendant and simultaneously dropped his request for injunctive relief.  Because Tolbert is no longer seeking injunctive relief, his claim under the Pennsylvania Constitution must be dismissed.

### B. Medical Malpractice

Tolbert has stated a claim for medical malpractice. Here, Tolbert has alleged that Dr. Wiener's actions, as described at length above, fell outside of the standard of care and breached the duty of care owed to Tolbert as his medical provider, causing him harm "including unnecessary pain, anguish, untreated leg and back injuries and neurological and concussion/post-concussion symptoms[.]" Further, Tolbert "has complied with Rule 1042.3, albeit in what may ultimately be a potentially problematic fashion, by attesting that expert testimony of an appropriate licensed professional is unnecessary for prosecution of the claim." *See Moore v. Wetzel*, No. 18-1523, 2019 U.S. Dist. LEXIS 36900, at *35-37 (M.D. Pa. Mar. 6, 2019) (explaining that these tort claims often require expert testimony to establish the elements of medical malpractice or prove causation, and once a plaintiff certifies that no expert is required to try his claim, the plaintiff will likely be precluded from introducing expert testimony, which "may ultimately be fatal to a medical malpractice claim"), *adopted by* 2019 U.S. Dist. LEXIS 51378 (M.D. Pa., Mar. 27, 2019). At this stage of the proceedings, however, the Court is not presented with a fully developed record concerning the need for expert testimony, and therefore Tolbert's medical malpractice claim survives.

### C. Retaliation

Tolbert has failed to state a retaliation claim under the First Amendment. Here, Tolbert claims that Dr. Wiener's actions alleged above, specifically his repeated failure to send Tolbert to a neurologist, were "taken in retaliation for Plaintiff's ongoing complaints and grievances that started with his verbal incident & exercise of his Constitutionally-protected rights to adequate medical care" when he refused to take Tylenol from Nurse Lewis. This Court finds that Tolbert was engaged in constitutionally protected activities, both when he refused to take Tylenol from

Nurse Lewis and when he submitted grievances against Dr. Wiener, because the right to refuse unwanted medical treatment is recognized under the Due Process clause of the Fourteenth Amendment, *see Napoleon,* 897 F.2d at 111, and the filing of a prison grievance also constitutes protected activity under the First Amendment. *See Fantone*, 780 F.3d at 191. However, Tolbert has not sufficiently alleged that that "the protected activity was a substantial or motivating factor" in Dr. Wiener's decision not to send him to a neurologist. Therefore, this Court finds that Tolbert has failed to state a First Amendment retaliation claim against Dr. Wiener.

With regard to Tolbert's grievances, Dr. Wiener's actions concerning Tolbert's medical treatment were consistent before and after any grievances were lodged against him. In fact, Dr. Wiener's refusal to send Tolbert to a neurologist was the subject of both of Tolbert's grievances, and therefore, necessarily, Dr. Wiener's actions came *before* Tolbert had filed grievances against him. Regarding Tolbert's refusal to comply with Nurse Lewis's request to take Tylenol, Dr. Wiener was not present during this incident and at no point does Tolbert allege that Dr. Wiener was made aware of this incident. Tolbert does not allege that Nurse Lewis communicated with Dr. Wiener about this incident. In fact, Tolbert does not even allege that he himself specifically discussed the Tylenol refusal with Dr. Wiener, although he did complain to Dr. Wiener generally about Nurse Lewis's treatment subsequent to his fall in the infirmary. Therefore, although Dr. Wiener's initial decision not to send Tolbert to a neurologist occurred on the same day as the Tylenol refusal, showing temporal proximity, Dr. Wiener's decision does not appear causally related to Tolbert's refusal to take Tylenol. Consequently, this Court cannot reasonably infer that Tolbert's attempts to exercise his constitutional rights, both to refuse medication and file grievances, were causally connected to Dr. Wiener's failure to schedule a neurology appointment. Therefore, the combination of facts alleged do not support a conclusion that Dr.

16
112822

Wiener engaged in a retaliatory act against Tolbert, and the retaliation claim against Dr. Wiener is dismissed.

### D.  Amendment of the Complaint

This Court is concerned that an amendment of either the retaliation claim under the First Amendment or deliberate indifference claim under the Pennsylvania Constitution will be futile. Nevertheless, in an abundance of caution and because those claims against Dr. Wiener are being dismissed without prejudice, this Court affords Tolbert one opportunity to amend his complaint. *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 111 (3d Cir. 2002) (holding that in the absence of undue delay, bad faith, dilatory motive, unfair prejudice, or futility of amendment, a court should grant a plaintiff leave to amend a deficient complaint after a defendant moves to dismiss it).

Tolbert is advised that any "amended complaint must be complete in all respects." *Young v. Keohane*, 809 F. Supp. 1185, 1198 (M.D. Pa. 1992). It must be a new pleading which stands by itself without reference to the original complaint. *Id.* The amended complaint "may not contain conclusory allegations. Rather, it must establish the existence of specific actions by the defendants which have resulted in constitutional deprivations." *Id.* (citing *Rizzo v. Goode*, 423 U.S. 362 (1976)). "The amended complaint must also be 'simple, concise, and direct' as required by the Federal Rules of Civil Procedure." *Id.* (citing Fed. R. Civ. P. 8(e)(1)).

Tolbert is not required to file an amended complaint. If he does not file an amended complaint within the time allotted by the accompanying order, his case will proceed against Dr. Wiener on his medical malpractice and Eighth Amendment claims, and against defendants Nurse Lewis, Sipple, and Officer Jones on Tolbert's claims against those defendants. But, if Tolbert

wishes to renew any of the claims dismissed by this Opinion, he must file an amended complaint that includes all claims.

## V.     CONCLUSION

Tolbert has pled sufficient facts showing deliberate indifference to a serious medical need under federal law, as well as medical malpractice under state law, by Dr. Wiener.  However, Tolbert has failed to plead sufficient facts showing retaliation by Dr. Wiener, or deliberate indifference under state law, and these claims are dismissed without prejudice. Therefore, the Motion to Dismiss is granted in part and denied in part, but Tolbert is granted leave to amend. Tolbert's remaining claims against Dr. Wiener may go forward, and likewise, Tolbert's claims against the other remaining defendants in this case are left undisturbed by this Court.

A separate order follows.

BY THE COURT:

*/s/ Joseph F. Leeson, Jr.*
JOSEPH F. LEESON, JR.
United States District Judge